**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**CARLOSE D. ROBINSON,**

        **Plaintiff,**

**v.**                                                **Civil Action No. 2:09cv102**
                                                          **(Judge Maxwell)**

**USP HAZELTON;
FEDERAL BUREAU OF PRISONS;
N. SHULTZ;
N. HOAGLAND;
D. LOHR;
D. PETRISKO;
J. DRIVER;
J. CROSS;
KIM WHITE;
HARLEY LAPPIN;
A. McCORMICK;
A. MOUSE,**

        **Defendants.**

## REPORT AND RECOMMENDATION FOLLOWING REMAND

### I.   Procedural History

On August 24, 2009, the *pro se* plaintiff filed a letter which was docketed as a <u>Bivens</u> complaint. Because the letter did not provide sufficient information for a preliminary review, the plaintiff was ordered to complete a form <u>Bivens</u> complaint. On September 4, 2009, the plaintiff complied with the order and filed the form complaint. The plaintiff was granted permission to proceed as a pauper on September 9, 2009, and paid the initial partial filing fee on September 28, 2009. Upon a preliminary review of the file, the undersigned determined that summary dismissal was not appropriate at that time and directed the United States Marshal Service to serve the Complaint.

On February 2, 2010, the defendants filed a Motion to Dismiss or, in the Alternative, Motion

for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on February 3, 2010.[1] The plaintiff filed a response to the defendants' motion on February 22, 2010 and included his own Motion to Dismiss without prejudice all of the defendants, save defendant Schultz.

On April 19, 2010, the undersigned issued a Report and Recommendation which recommended that the defendants' Motion for Summary Judgment be granted, and the plaintiff's claims against USP Hazelton, the Federal Bureau of Prisons, N. Shultz, D. Petrisko, J. Driver, J. Cross, Kim White, Harley Lappin, A. McCormick, and A. Mouse be dismissed with prejudice, and the plaintiff's claims against N. Hoagland and D. Lohr be dismissed without prejudice. In rendering the Report and recommendation, the undersigned referenced Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994, which has now been explicitly overruled by the Supreme Court. Accordingly, on July 30, 2010, the Honorable John Preston Bailey, United States District Judge, remanded the case to the undersigned for further consideration.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, Plaintiff asserts that on April 20, 2008, while incarcerated at USP Hazelton, he was physically attacked by defendant Shultz. More specifically, the plaintiff alleges that defendant Schultz repeatedly hit him in the face and head area with his fists while one hand clasped a pair of government issued handcuffs. The plaintiff alleges that he received several bruises, swelling to his facial area which included small cuts to his mouth, and excruciating pain that lasted "for days on end." The plaintiff further alleges that he was then charged with assault on an officer

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

2

and refusing to obey a direct order. The plaintiff also maintains that to prevent him from alerting his family or seeking any outside help, he was placed in a cell for twenty-four hours a day until his injuries healed. In addition to his complaints regarding excessive force, the plaintiff appears to allege that defendant Lohr, the Disciplinary Hearing Officer, and defendant, Hoagland, his staff representative, violated his rights during the disciplinary hearing regarding his charge of having assaulted an officer and refusing to obey an order. The plaintiff further alleges that after spending ten months in the Special Housing Unit ["SHU"], he was again placed back in the SHU while an investigation was made into staff assault. The plaintiff alleges that this was done as a form of retaliation to punish him and deny him proper access to the courts. Finally, the plaintiff alleges that the defendants conspired to conceal the physical assault committed by defendant Shultz. As relief, the plaintiff seeks monetary damages and injunctive relief.

**B.  The Defendant's Motion to Dismiss**

In their memorandum in support of their motion to dismiss or, in the alternative, for summary judgment, the defendants argue that the plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the defendants assert:

(1) the plaintiff's claims against USP Hazelton and the Federal Bureau of Prisons ("BOP") must be dismissed because a Bivens action cannot be maintained against the federal governments and/or its agencies;

(2) the plaintiff's claims against defendants Kim White, Harley Lappin, James Cross, and Joe Driver must be dismissed because they had no personal involvement in the violations alleged by the plaintiff;

(3) defendants Lohr and Hoagland must be dismissed from this action because the plaintiff

must first seek habeas relief under 28 U.S.C. § 2241 from disciplinary action before bringing suit against individual defendants;

(4) the plaintiff's allegations regarding retaliation or conspiracy against him as well as claims regarding his detention in the Special Housing Unit ("SHU") must be dismissed because the plaintiff failed to exhaust his administrative remedies regarding these issues;

(5). The plaintiff's allegations that staff conspired to conceal a crime against him and retaliated against him by placing him in the SHU are conclusory and unsupported by evidence and must be dismissed;

(6) The plaintiff's allegations of excessive force are baseless and must be dismissed; and

(7) The defendants are entitled to qualified immunity.

## C. The Plaintiff's Response to the Defendants' Motion to Dismiss

In his response to the motion to dismiss, the plaintiff indicates that he joins the government's motion to dismiss USP Hazelton, Federal Bureau of Prisons, N. Hoagland, D. Lohr, D. Petrisko, J. Driver, J. Cross, Kim White, Harvey Lappin, A McCormick, and A. Mouse. However, he further indicates that he only joins the motion to dismiss to the extent that is "without prejudice to [his] seeking to charge the defendant at a later time should he deem it necessary." (Doc. 56, p1.). However, as to defendant, Neal Shultz, the plaintiff indicates that he will not concede to the motion to dismiss. The plaintiff then alleges again his allegations against Neal Shultz, emphasizing that this defendant, "while acting under color of law punched him repeatedly in the facial area with handcuffs." (Id. at 2.). The plaintiff maintains that the defendants have failed to rebut his allegations, and, in fact, concede the point. The plaintiff then asserts that the assault by defendant Shultz impaired his right to be free from cruel and unusual punishment. The plaintiff concludes his

4

response by asking that his allegations against defendant Shultz be set for discovery proceedings.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to

5

state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the

opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir

1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. USP Hazelton and the BOP**

This action is being analyzed pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to §1983 so that individuals may bring a suit against a federal actor for violating a right guaranteed by the Constitution or federal law. However, a Bivens cause of action cannot be brought against a federal agency. See FDIC v. Meyer, 510 U.S. 471, 486 (1994); Steele v. Federal Bureau of Prisons, 355 F.

3d 1204 (10th Cir. 2003). Accordingly, neither USP Hazelton nor the BOP is a proper defendant and are due to be dismissed with prejudice from this action.

**B. Defendants Kim White, Harley Lappin, James Cross, and Joe Driver**

In his complaint, the plaintiff alleges that these defendants were informed by him of the assault though the administrative remedy process but refused to take any action. However, liability in a <u>Bivens</u> case is "personal, based upon each defendant's own constitutional violations." <u>Truloch v. Freeh</u>, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See <u>Zatler v. Wainbright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u> 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of these defendants.[2] Instead, it appears to name them only in their official capacities as the wardens of USP Hazelton, the regional director of the BOP and the director of the BOP. However, a suit against government agents acting in their <u>official</u> capacities is considered a suit against the United States itself. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy

---

[2]To the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a <u>Bivens</u> claim. See <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

under Bivens is not available against these defendants in their official capacity, and they should be dismissed with prejudice as defendants in this action.

**C. Defendants Lohr and Hoagland**

As the result of the altercation between the plaintiff and defendant Schultz, the plaintiff was charged with Assault on a Staff Member and Refusing to Obey an Order. Defendant Lohr was the disciplinary officer who found the plaintiff had committed the offense as charged. In addition to other sanctions, defendant Lohr gave to the plaintiff thirty days of disciplinary segregation and disallowed twenty-seven days of Good Conduct Time. (Doc. 51-11). Defendant Hoagland was the staff representative assigned to the plaintiff at his request. (Doc. 51-11, p. 1). The plaintiff alleges that defendant Hoagland informed defendant Lohr that he reviewed the videotape of the altercation but would not go on record as having seen defendant Schultz assault him without provocation. The plaintiff also alleges that defendant Lohr refused to view the tape herself. Beyond those allegations, it is unclear what the plaintiff alleges that these two defendants did so as to violate his constitutional rights.

In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994), the Supreme Court of the United States found:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus . . .

Heck at 487 (footnote omitted). These principles are equally applicable in civil rights cases that challenge the constitutionality of a prison disciplinary proceeding. Edwards v. Balisok, 520 U.S.

641 (1997).

Here, the plaintiff challenges a disciplinary proceeding which resulted in loss of good conduct time and seeks monetary damages for the same. However, the plaintiff has made no showing that the finding of guilt has been reversed on direct appeal, expunged by executive order, declared invalid by a tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Therefore, the plaintiff is not entitled to seek monetary damages against these two defendants at this time, and they should be dismissed as defendants, without prejudice. To the extent that the plaintiff seeks the invalidation of the guilty finding or expungement of the disciplinary report, the proper avenue for which the plaintiff may seek relief is through a petition for writ of habeas corpus under 28 U.S.C. § 2241.

D. **Retaliation and Conspiracy**

In his complaint, the plaintiff alleges that: (1) staff conspired to conceal officer Shultz's crime against him and failed to act in accordance with BOP policies and procedures; (2) defendant McCormick failed to protect him from the assault and falsified documents; (3) he was placed in the SHU and kept in a cell for 24 hours a day until his injuries healed; and (4) once released from the SHU, he was placed back into it as retaliation and as a way to deny him access to the courts. However, the plaintiff never filed any administrative remedies regarding these claims. (Doc. 51-1, p.2).

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general

10

circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order

---

[3] Porter v. Nussle, 534 U.S. 516, 524 (2002).

to properly exhaust his administrative remedies.

Because the plaintiff failed to file any administrative remedies regarding his claims of retaliation, conspiracy, or detention in the SHU, as required by the PLRA, these claims must be dismissed. Moreover, because it is now impossible for the plaintiff to properly exhaust his administrative remedies,[4] dismissal should be with prejudice.

### E. Excessive Force

Analysis of a claim for use of excessive force begins with "identif[ication of] the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments. The validity of the prisoner's claim must "be judged by reference to th[is] specific constitutional standard...rather than to some generalized 'excessive force' standard." Graham v. Connor, supra at 394; *see e.g*, Whitley v. Albers, 475 U.S. 312, 318-326 (1986)(claim of excessive force to subdue convicted prisoner is to be analyzed under an Eighth Amendment standard).

A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. *See* e.g.*,* Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular

---

[4]The deadline for filing an administrative remedy action, including informal resolution forms, is twenty days from the date of the incident. See Program State Number 1330.16, § 542.14

circumstances surrounding the challenged conduct. <u>Wilson v. Seiter</u>, 501 U.S.294, 299 (1991). When prison officials are accused of using excessive force, the "wantonness" issue turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, at 7 (internal quotation marks omitted).

The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of "contemporary standards of decency." <u>Hudson</u> at 8. In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." <u>Id</u>. (quoting <u>Wilson</u>, <u>supra</u> at 298). When prison official use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated... This is true whether or not [sic] significant injury is evident." <u>Hudson</u> at 9. However, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to "*de minimus* use of physical force provided that the use of force is not the sort repugnant to the conscience of mankind." <u>Id</u>. at 10 (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" <u>Id</u>. at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973).

In this particular case, there is no dispute that the plaintiff and defendant Schultz were involved in an altercation on April 20, 2008. The plaintiff claims that defendant Schultz physically attacked him by hitting him in the face and head with his fists while one hand was clenched around handcuffs. The plaintiff was examined by USP Hazelton medical staff on that same date. He reported to medical staff that he had "got into it with an officer," and reported "I am alright." (Doc. 51-7, p.1). Medical staff noted that the plaintiff had mild swelling and bruising to his left eye, and a small cut inside his lip at the left corner of his mouth. No other injuries were noted. He was told

to follow up with sick call as need, was given ice for his eye and Motrin for pain. (Id.). The plaintiff's medical records from USP Hazelton indicate that the plaintiff never presented to Health Services seeking followup care for the injuries he received on April 20, 2008. (Id,). Clearly, this medical evidence establishes no more than *de minimis* injuries.

As discussed above, the absence of any significant injury to the petitioner does not end the Eighth Amendment inquiry, because standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic. Here, the record does not permit an inference that Shultz used force that was "repugnant to the conscience of mankind." Although the plaintiff makes a bald assertion that defendant Schultz beat him with handcuffs, the medical evidence does not support that allegation. In addition, defendant Schultz has tendered an affidavit in which he denies this allegation. (Doc. 51-5). Moreover, defendant Schultz notes that: "in hindsight it appears that inmate Robinson created a diversion to take our attention off the inmates who we were attempting to search, as both inmates were able to leave the area while we were attempting to gain control over the plaintiff." (Doc. 51-5, pp. 1-2). Finally, it is pertinent to note that the plaintiff did not raise the allegation that defendant Schultz had beaten him until May 22, 2008, the date initially set for his disciplinary hearing. As a result of this allegation, the DHO hearing was suspended until an investigation was done into the plaintiff's allegations. Donald Petrisko, Supervisory Investigative Agent, reviewed all the documentation on the incident, which included after action memorandums, the videotape of the incident, and the photographs taken of the plaintiff immediately after the incident. The results of this investigation found no evidence to support the plaintiff's allegation. Accordingly, there is noting before the court, other than the plaintiff's self serving allegation, to support a finding that the force used was more than a good faith

effort to restore discipline. Accordingly, the plaintiff's excessive force claim is due to be dismissed with prejudice.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (dckt. 50) be **GRANTED,** the plaintiff's claims against USP Hazelton, the Federal Bureau of Prisons, N. Schultz, D. Petrisko, J. Driver, J. Cross, Kim White, Harley Lappin, A. McCormick, and A. Mouse be **DISMISSED WITH PREJUDICE**, the plaintiff's claims against N. Hoagland and D. Lohr be **DISMISSED WITHOUT PREJUDICE** subject to his right to seek reversal of his disciplinary conviction before filing a Bivens complaint against them stemming from the disciplinary hearing, the plaintiff's Motion to Dismiss (Doc. 55) be **DENIED** because he seeks dismissal without prejudice, and the plaintiff's Motion to Alter or Amend Magistrate's Report and Recommendation(Doc. 65) be **DENIED AS MOOT.**

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se*

plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: August 17, 2010.

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE